[Civil No. 3655. Filed February 3, 1936.]

[53 Pac. (2d) 1088.]

ATLANTIC COMMISSION COMPANY, a Corporation, Appellant, v. A. E. NOE and VIRGIL B. MOSS, Doing Business as NOE–MOSS DISTRIBUTING COMPANY, Appellees.

Mr. Mark B. Thompson, for Appellant.

Mr. Norman S. Herring and Mr. Richard F. Harless, for Appellees.

LOCKWOOD, C. J.—A. E. Noe and Virgil B. Moss, copartners, doing business as Noe-Moss Distributing Company, hereinafter called plaintiffs, brought suit against Atlantic Commission Company, a corporation, hereinafter called defendant, to recover the sum of $894.60 for certain merchandise which plaintiffs allege they sold to defendant for that agreed price.

The case was tried to a jury which returned a verdict in favor of plaintiffs for the full amount, and judgment was thereafter rendered for the amount of the verdict, together with interest thereon from April 21, 1933, the day on which it is alleged the sale was made and payment was due therefor. After the usual motion for a new trial was overruled, this appeal was taken.

There are but two questions for our consideration on the appeal, the first being whether the evidence sustains the verdict and judgment, and the second, whether the court had jurisdiction to add to the amount of the verdict rendered by the jury interest thereon when it rendered judgment. We shall consider these questions in their order.

The facts of the case, stated as strongly as is reasonably possible in support of the verdict and judgment, as under our oft-repeated rule we are bound to assume they exist, are as follows: Plaintiffs were engaged in the business of marketing vegetables grown in the Salt River Valley by various parties. In the early part of April they packed a carload of fresh peas, and on April 17th shipped them over the Santa Fé Railroad, consigned to themselves at Kansas City, Missouri. On the 21st day of April, Moss engaged in conversation with one Beryl Collins, a broker,

in regard to a sale of the peas. Collins referred him to John D. Snow, whom it is stipulated was defendant's agent, and, apparently at least, authorized to purchase goods of the class shipped by plaintiffs. According to the testimony of Moss, after some discussion of the matter and an exhibition by Moss to Snow of the United States inspection sheet of the peas, the latter bought them for $1.42 per crate, the total price at that rate amounting to $894.60, payable immediately. Moss then went to the railroad office and had a diversion order executed, by the terms of which the railroad was required to deliver the peas to defendant in Kansas City. Snow, while admitting having had a conversation with Moss in regard to the peas at the time mentioned, and the giving of the diversion order, gives an entirely different version of the transaction, but we must assume from the verdict of the jury that it believed Moss' account and disbelieved Snow's, and we are bound by their conclusion. Admittedly, after the diversion order was made, defendant took possession of the peas in Kansas City, re-iced them and had them forwarded to St. Louis, Missouri. While there they became spoiled and unsalable, and were eventually a total loss. Demand was made by plaintiff for payment of the $894.60, and it being refused by defendant, this suit was brought.

Were this all the evidence in the case, it is not denied by defendant that it would be sufficient to sustain the verdict. It, however, contended that the peas were not purchased by it, but that it merely accepted them as an agent of plaintiffs to sell them on commission, and that since they became unsalable through no negligence on its part, it was not liable to plaintiffs in any manner. In support of its theory, it introduced the evidence of Snow, who testified positively that the deal, admittedly made on April

21st, was on a commission and not a purchase basis, and two written instruments signed by Moss, the first of which reads as follows:

> "Phoenix, Ariz., April 27, 1933.
>
> "Mr. John D. Snow, Atlantic Comm. Co. Inc., Phoenix, Ariz.
>
> "Dear Sir: Confirming our conversation with reference to car of peas RD 15749, we turned this car to the Atlantic Comm. Co. on consignment April 21, 1933, car then being located on the Santa Fé Railroad at Kansas City, Mo.
>
> "This is your authority to handle the car to best advantage and if necessary file claim with the railroad to cover our loss due to deterioration in transit."

The second is in the following language:

> "Phoenix, Ariz., July 15, 1933.
>
> "Mr. Geo. B. Cady, T. M., Atlantic Commission Co., 1101 Builders Exchange Bldg., Los Angeles, California.
>
> "Dear sir: Your file, PCL 2257–1181–F, RD 15749, received.
>
> "Mr. Furlong has been handling my traffic matters for sometime past. Therefore, please send him all papers necessary for filing claims on the car in question.
>
> "As soon as he receives these claim papers, we will attend to the icing and inspection bills you refer to.
>
> "As this matter has been pending for some little time, your immediate compliance with this request will be appreciated."

It is defendant's contention that the evidence of Moss in regard to the nature of the contract was clearly shown by the first letter to be an attempt to vary the terms of a written contract, and that this cannot be done by parol. We think this contention is clearly untenable. Admittedly the deal in regard to the peas, whatever it may have been, was made on April 21st, and the letter in question was dated April 27th. It could not, therefore, have been the contract under which the peas were delivered to defendant. It was,

at most, merely in the nature of a written admission by plaintiffs that the transaction was one of consignment and not one of purchase, and so far as the rules of evidence are concerned, had no more effect than an oral admission of the same nature would have had. Plaintiff explained this letter by stating that Snow asked him to sign it, representing that it was necessary that it should be put in this form so that defendant might recover from the railroad company the value of the peas, when it would, in turn, pay plaintiff therefor, and that he never intended to admit that the peas were placed on consignment. The truth or the falsity of this explanation is, of course, for the jury, unless it was either impossible or so clearly unreasonable that no fair-minded man could accept it as true. While the explanation might not have been believed by the court sitting alone, or by a different jury, we cannot say that, as a matter of law, it is so incredible that the jurors who did try the case could not legally accept it, and this being true, we are bound by their conclusion.

The same rule applies with even greater force to the second letter. It, at most, would permit the jury to infer that Moss' testimony in regard to the transaction was untrue, but again the jury evidently refused to make such inference, and we cannot question their action. The evidence is legally sufficient to sustain the verdict.

■ The second question is in regard to the interest from April 21, 1933, which was not included in the verdict. We have held that interest is recoverable as a matter of law on all liquidated claims from the time they are due. *Palmcroft Dev. Co.* v. *City of Phoenix,* 46 Ariz. 200, 400, 51 Pac. (2d) 921. If anything at all were due plaintiffs, according to the evidence, it must have been due on April 21st. The

court, therefore, in its judgment merely added to the verdict that to which, as a matter of law, plaintiffs were entitled. We see no error in this.

The judgment of the superior court is affirmed.

McALISTER and ROSS, JJ., concur.